UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

The Honorable Judge MARRA

**CASE NO**. 16-81795-CIV

**ENGINEERED TAX SERVICES, INC**., a
Florida corporation,

    **Plaintiff**,

-vs.-

**SCARPELLO CONSULTING, INC.**, a
Nebraska corporation.

    **Defendant**.
_____/

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**COMES NOW,** Plaintiff, Engineered Tax Services, Inc., in the above styled cause, and moves this Honorable Court for a Judgment on the Pleadings against Defendant and avers as follows:

**MEMORANDUM OF LAW**

**I.     INTRODUCTION**

Plaintiff, Engineered Tax Services, Inc. brings forth an Eight-Count Complaint against Defendant, Scarpello Consulting, Inc., for violations of Sections 32, 43(a), 43(d), 43(c), of the Lanham Act (Counts One through Five), common law trespass to chattels (Count Six), Florida State Unfair Trade Practices under Fla. Stat. § 501 *et. seq*. Florida Deceptive & Unfair Trade Practices Act (Count Seven), and common law unjust enrichment (Count Eight).

## II.   BACKGROUND

Plaintiff offers a wide array of tax based studies available for owners of real property as well as certified public accounting firms.  Plaintiff's services include but are not limited to research and development tax credit studies, 179D Tax Deductions, Energy Modeling, Construction Tax Planning, Disposition Studies, and cost segregation studies. Compl. ¶ 3. Both Plaintiff and Defendant offer cost segregation services to property owners as well as certified public accounting firms.  Compl. ¶ 6, 12.

Cost segregation is the practice of identifying building assets and their costs, and classifying those assets for federal tax purposes.  Commercial property is generally depreciated for tax purposes of 39 years and residential property over 27.5 years.  Among the advantages of having a cost segregation study performed is that certain assets such as furniture, fixtures, landscaping and parking lots previously classified as subject5 to either 39 or 27.5-year depreciable life, can instead be classified as personal property or land improvements with a 5, 7, or 15-year rate of depreciation using accelerated methods.  Cost segregation studies are one of the most valuable tax strategies available to commercial real estate owners today.   It offers facility owners the opportunity to defer taxes, reduce their overall tax burden, and free up capital by improving their cash flow.

Engineered Tax Services, Inc. was founded on November 23, 2006 in the State of Florida by its CEO, Julio Gonzalez.  Compl. ¶ 3. Mr. Gonzalez is considered a pioneer in the field of offering cost segregation services to real property owners.  Compl. ¶ 16. Mr. Gonzalez has invested significant resources to develop and foster the reputation, recognition, and goodwill associated with Engineered Tax Services, Inc. by utilizing extensive advertising, marketing, promotional and educational campaigns throughout the United States. Id. Since the date of first use of the name, Engineered Tax Services, the company has acquired the distinction of providing high quality tax based studies and the name has become synonymous with excellence in the accounting and real estate industries. Id.

Defendant began purchasing Plaintiff's mark in its Google AdWords program and also using the exact mark in their advertising copy at least as early May, 2016.  Compl. ¶ 12. Defendant's use of Plaintiff's mark in commerce makes it appear as if Defendant's services are supported by or affiliated with Plaintiff's.  Defendant's intent is clear; they are attempting to gain a free ride on Plaintiff's success in the industry.  Compl. ¶ 13.

Plaintiff attempted to communicate with Defendant about their infringing use of Plaintiff's mark.  Compl. ¶ 18.  Defendant refused to cease and desist from using Plaintiff's mark in commerce by claiming that "the phrase at issue is only general and descriptive." Compl. at Exhibit "**B**." [Response letter dated July 8, 2016 by Daniel J. Fischer, Koley Jessen].  Defendant's counsel goes on to remark that [they] "take issue with any threat . . . [of] pursu[ing] any legal action against [Defendant], . . . in light of . . . Rule 11 obligations." Id. Plaintiff had no other recourse except to file the Complaint. Compl.  ¶ 19.

### III.   STANDARD OF REVIEW OF A MOTION FOR JUDGMENT ON THE PLEADINGS

Federal Rule of Civil Procedure 12(c) permits motions for judgment on the pleadings: [a]fter the pleadings are closed--but early enough not to delay trial. A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standard as a Rule 12(b)(6) motion to dismiss; on a motion for judgment on the pleadings, a court must make all inferences in favor of the nonmoving party and "must 'accept the facts alleged in the complaint as true.'" See *Guarino v. Wyeth LLC*, 823 F.Supp.2d 1289, 1291 (M.D. Fla. 2011) (quoting *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998)). "Judgment on the pleadings is appropriate when ***there are no material issues of fact in dispute***, [emphasis added] and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Id. at 1295.

The Court must assume that all facts in the complaint are true and view those facts in a light most favorable to the non-moving party. *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998).

### IV.   DISCUSSION

#### A.   This Court has Subject Matter Jurisdiction and Supplemental Jurisdiction

This Court has subject matter jurisdiction over the claims in Plaintiff's Complaint because this litigation arises under federal law pursuant to the Trademark Laws of the United States, 15 U.S.C. § 1114 *et seq.* (action arising under the Lanham Act), 28 U.S.C. § 1331 (a federal question) and 28 U.S.C. § 1338 (civil action arising under any Act of Congress relating to . . . trademarks). Defendant admits this court has subject matter jurisdiction. Def.'s Answer ¶ 7.

This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 as the claims are so related to claims within such original jurisdiction that they form part of

the same case or controversy under Article III of the United States Constitution. Defendant admits at that this court has supplemental jurisdiction over the state claims.  Def.'s Answer ¶ 8.

### B.  Defendant is Subject to Personal Jurisdiction Pursuant to Florida's Long-Arm Statute

Defendant has subjected itself to personal jurisdiction in the state of Florida (1) by purposefully availing itself of the privileges of conducting business in the state of Florida by having an office carrying out its business venture located in the city of Orlando, Florida, (2) by knowingly infringing on the intellectual property rights of a business resident of the state of Florida, and (3) by causing dilution and harm to Plaintiff's property rights in its trademark in the state of Florida.

A Defendant subjects itself to personal jurisdiction in the state of Florida under the provisions of Florida's Long-Arm Statute, Fla. Stat. § 48.193 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution, when "whether or not a citizen or resident of this state, who personally or through an agent . . .does any of the enumerated [acts] in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state . . .  Fla. Stat. § 48.193 (1)(a) [by] operating, conducting, engaging in, or carrying out on a business or business venture in this state or having an office or agency in this state id*. at* (1)(a)(1) [or] commits a tortious act [of trademark infringement with the knowledge that its conduct would cause harm] within this state. . . id. at (1)(a)(2) or [by] causing injury to persons or property within this state arising out of an act . . . by the defendant outside the state, if at, or about the time of injury the . . . id. at (1)(a)(6) the defendant was engaged in solicitation of service activities within this state id. at (1)(a)(6)(a)."

Defendant admits that a screenshot of their website that establishes a physical place of business a located at 7380 Sand Lake Road, Ste. 500 in Orlando, Florida.  Def.'s Ans. ¶ 6.  Additionally, Defendant has subjected itself to personal jurisdiction by knowingly committing the tortious act of trademark infringement with the knowledge that this conduct would cause harm to a resident business located in the State of Florida.  Defendant admits that they are using Plaintiff's mark in their keyword advertising program through Google AdWords.  Def.'s Answer ¶¶ 13, 23, 36.  Defendant admits that the Complaint includes a screenshot whereby Defendant uses Plaintiff's exact trademark in their advertising copy.  Def.'s Answer ¶¶ 13, 36.  Defendant admits "that it received letters from Plaintiff's in-house counsel."  Def.'s Answer ¶¶ 18-19 (acknowledging the receipt of two Cease and Desist letters dated May 16, 2017, and June 17, 2016; attached to the Complaint as Composite Exhibit "**G**.").  Defendant "denies the substance of the letters received from Plaintiff as an impermissible attempt to assert exclusivity over terms and over uses that are general, generic . . . " Id.  Defendant therefore, was aware that Plaintiff owned the trademark and that Plaintiff did not consent to their infringing use of the mark in commerce.  Defendant is knowingly damaging the value of Plaintiff's personal property rights in its trademark by causing dilution to Plaintiff's federally protected mark.

### C.  Plaintiff Prevails as A Matter of Law:  Lanham Act Claims

Courts interpret both Sections 32 and 43 of the Lanham Act to require a plaintiff to establish three elements for a successful trademark infringement action *DeCosta v. Viacom Int'l, Inc.*, 981 F. 2d 602, 605 (1st Cir. 1992).   [Count 3- Initial Interest Confusion will be addressed separately.]

> *First, the plaintiff must demonstrate a valid trademark entitled to protection under the Lanham Act.  Id.*
>
> *Second, the plaintiff must show the defendant used the plaintiff's mark or a similar mark in commerce. Id.*

> *Third, the plaintiff must prove the defendant's use will create a likelihood of confusion. Id.*

### 1. Plaintiff's Mark is Entitled to Protection under the Lanham Act

The Lanham Act of 1946 federally regulates trademarks by creating a registration system for marks used in U.S. commerce and providing causes of action for infringement of both registered and unregistered marks. 15 U.S.C. § § 1051, 1051-1072, 1091-1096, 111-1127 (2009). Under the Lanham Act, a trademark Is "any word, name, symbol, or device or a combination thereof . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods. Id. at § 1125,

A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's **exclusive right** [emphasis added] to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate. 15 U.S.C. § 1057(b), 1115(a) (2006).

Pursuant to Fed. R. Civ. P. 201(c)(2) the court must take judicial notice if a party requests it and the court is supplied with the necessary information. The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned. Id at (b)(2). This Court may take judicial notice of Plaintiff's registered trademark as published in the Principal Register. *Cf. Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 n.2 (8th Cir. 1996) (taking judicial notice of trademark registrations published in Patent and Trademark Office's registry).

Moreover, Defendant Admits "Exhibit "**E**" of the Complaint is a true and accurate copy of a trademark registration from United States Patent and Trademark Office." Def.'s Answer ¶ 12. Exhibit "**E**" of the Complaint is copy of the United States of America United States Patent and Trade Office Registration No. 4,977,182, Trademark for "Engineered Tax Services," Registered on the Service Mark Principal Register.

### 2. Defendant's Use of Plaintiff's Mark in Commerce is an Unauthorized Use

Defendant admits that it employs visible and invisible internet techniques designed to get consumers and search engines to drive traffic to its website by admitting to purchasing keywords to trigger a display to their advertising containing the visible trademark term in their advertising copy. Def.'s Answer ¶¶ 13-14. Specifically, Defendant admits that it uses Plaintiff's protected mark "Engineered Tax Services in its advertising," Def.'s Answer ¶¶ 13, 23. Defendant also admits the results of a Google search using the term, "Engineered Tax Services" depicts that Defendant appears at the top of the search results page using Plaintiff's exact trademark as its advertising copy; with the trademark appearing even above Defendant's own business name. Def.'s Answer ¶¶ 13-14. Defendant admits that by purchasing Plaintiff's mark, it will cause their website to appear when a consumer uses a search engine and enters Plaintiff's mark. Def.'s Answer ¶ 14.

Additionally, pursuant to the Federal Rules of Civil Procedure, in an answer, a "denial must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2). Moreover, "[a]n allegation . . . is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). If an answer fails to deny any of the allegations in the complaint, those allegations must be accepted as true. See United States ex rel. 'Automatic' Sprinkler Corp. of Am. v. Merritt-Chapman & Scott Corp., 305 F. 2d 121, 123 (3d Cir. 1962) (deeming admitted allegation in the complaint to which the answer did not respond).

Plaintiff alleges "that Plaintiff possess the valid and enforceable service mark, Engineered Tax Services." Compl. ¶ 21.  Plaintiff further alleges that Defendant's "use of Plaintiff's mark in connection with Google's AdWords program; . . . constitutes an unauthorized use in commerce." Compl. ¶ 22.  However, Defendant "denies the allegations contained in paragraph 11 of the Complaint." Def.'s Answer ¶ 21-22.  Defendant fails to either admit or deny the specific allegations contained in Paragraphs 21 and 22 of the Complaint.  Defendant's failure to answer the allegations result in those specific allegations being deemed admitted. Thus, Defendant admits that Plaintiff has a valid enforceable service mark, and that their use of Plaintiff's mark is an unauthorized use in commerce.

### 3. Defendant's Use of Plaintiff's Mark Creates a Likelihood of Confusion

The 11th Circuit established a seven-factor test for likelihood of confusion.  *Tally-Ho, Inc., v. Coast Community College District*, 889 F.2d 1018 (11th Cir. 1989) as reported in *Carnival Brand Seafood Co., v. Carnival Brands*, 187 F. 3d 1307 (11th Cir. 1999).

(a) Distinctiveness of the Mark;
(b) Similarity of the Two Marks;
(c) Similarity of the Goods;
(d) Similarity of Trade Channels;
(e) Similarity of Advertising;
(f) Intent: i.e., Good or Bad Faith, of the Alleged Infringer; and
(g) Evidence of Actual Confusion, if any.  Id.

a. **Distinctiveness of the mark alleged to have been infringed**.  Despite Defendant's purported justification for using Plaintiff's mark in commerce as "generic and general," Def.'s Ans. Def.'s Answer ¶¶ 13, 23, there is no such industry in tax or accounting entitled "engineered tax," unlike the term "corporate tax," which is a generic term used by those in the industry of tax services providing their services to corporations rather than individuals.

    The name, Engineered Tax Services was a fanciful or suggestive name created by Julio Gonzalez in 2006 based upon the cost segregation tax studies performed for which the IRS requires an engineer to perform a site visit on the subject property.

b. **Similarity of the mark alleged to have been infringed**. Defendant, Scarpello Consulting, Inc. is using the name Engineered Tax Services even above its own name in its advertising. Def.'s Answer ¶¶ 13, 23. It is undisputed that they are using the federally protected name as their own in their advertising with Google AdWords as well as using the identical name in their sponsored advertising text. Def.'s Answer ¶¶ 13, 14, 23.

c. **Similarity between the goods or services offered under the two marks**. Plaintiff and Defendant offer the same exact services. Defendant admits "it is a competitor of Plaintiff providing some of the same or similar services, which includes tax consulting relating to cost segregation." Def.'s Answer ¶ 12.

d. **Similarity of the actual sales methods used by the two parties, such as their sales outlets and customer base, sometimes called the similarity of trade channels**. Plaintiff and Defendant use the identical channels of trade for advertising and promotion offering the same exact services to the same potential consumers; including, but not limited to real property owners and certified public accounting firms.

e. **Similarity of advertising methods**. Plaintiff and Defendant rely heavily on web-based advertising and promotion and both have their respective fully interactive websites that offer and advertise the same services.

f. **Intent of the alleged infringer to misappropriate the proprietor's good will**. "Although objective factors are most important in assessing the likelihood of confusion between two marks, courts also examine the defendant's subjective intent, *HBP, Inc. v. American*

*Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1337 (M.D. Fla. 2003).  A defendant acts in bad faith when it adopts "its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's products."  *Michael Caruso & Co. v. Estefan Enterprises, Inc.*, 994 F. Supp. 1454, 1462, (S.D. Fla. 1998); see also *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F. 2d 252, 263 (5th Cir. 1980) (bad faith normally involves efforts by a party to "pass off" its product as related to another).

The evidence demonstrates that Defendant was aware that Plaintiff existed and was enjoying great success under the name, Engineered Tax Services.  Plaintiff has been using the name, Engineered Tax Services, the trademark about which this litigation arises since 2006, the date of incorporation in the state of Florida.  By using Plaintiff's trademark name in their advertising copy in search page results, it can be inferred that Defendant is using Plaintiff's mark with the intent to deceive consumers who are actively searching for Plaintiff's company into believing that by clicking on a link containing the Plaintiff's trademark they will be directed to the Plaintiff's website.

g.  **Evidence of actual confusion, if any**.  This dispute arose . . . when a client of [Plaintiff's] mentioned that advertisements for Scarpello Consulting, Inc. appeared when one searched for the term, "Engineered Tax Services" [using] Google['s search engine.]  Compl. ¶ 12.

### D.  Plaintiff Prevails as A Matter of Law:  Initial Interest Confusion Doctrine

Initial interest confusion is the temporary, pre-sale confusion that occurs when a consumer is drawn to a product [or service] believing it to be affiliated with another company because the product somehow evokes that company's trademark.  *See, e.g., Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F. 3d 456, 464 (7th Cir. 2000) ("Such confusion, which is actionable under the Lanham Act, occurs when a consumer is lured to a product by its similarity to a known mark, even though

the consumer realizes the true identity and origin of the product before consummating a purchase.")  Initial interest confusion is a judicially created doctrine applied where a product generates initial customer interest by using another's trademark, even if the customer never actually buys the infringing product.  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23-29 (4th ed. 2009).  Courts applying initial interest confusion can hold defendants liable based on an unfair "bait-and-switch theory" for practices that "affect the buying decisions of consumers in the market for the goods [or services] effectively allowing the competitor to get its foot in the door by confusing consumers.  *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996).

On March 24, 2016, the Eleventh Circuit Court decided an appeal from the United States Court for the Southern District of Florida affirming the district court basing jury instructions for the Initial Interest Confusion Doctrine on the instructions on the Eleventh Circuit Pattern Civil Jury Instruction for trademark infringement.  *ADT, LLC v. Alarm Protection Technology Florida, LLC, et al.,* Docket No. 9:12-cv-80898-KLR.  The ADT Court affirmed the Southern District Court specifically stating that "[i]nitial interest confusion is another word for saying initially at the door, not necessarily later on the sale."  The district court instructed the jury that "[plaintiff] must demonstrate by a preponderance of the evidence that defendants' use of its trademark is, when viewed in its entirety, likely to cause confusion as to the source, origin, affiliation, approval or sponsorship of the goods in question." See Pattern Civ. Jury Instr. 11th Cir. 10.1 (2013), *ADT* at 5.

As this cause of action has the same underpinnings as the other various Lanham Act allegations, the ADT Court recommends the same analysis as trademark infringement be used for Initial Interest Confusion.

### E.  Plaintiff Prevails as A Matter of Law:  Count Six Plaintiff Is Entitled to Judgment Against Defendant for Trespass to Chattels

Trespass to chattels, an old and rarely used common law tort, provides redress for unauthorized use or intermeddling with another's personal property.  See generally Restatement (Second) of Torts §§ 217-218 (1965).  In 1996, a California appellate court established that electrons and electronic signals are sufficiently physical and tangible to constitute trespass to chattels. *Thrifty-Tel Inc. v. Bezenek*, 46 Cal. App. 4th 1559 (1996).  In *Thrify-Tel*, a telephone operator sued the families of two minors who used a computer to hack into the telephone system. In *eBay Inc. v. Bidder's Edge, Inc.*, 100 F. Supp.2d 1058 (2000), spiders searching internet accessible databases were held to be trespassing the database servers.  If the courts have recognized property rights in data bases, servers, and emails *a fortiori* the courts should find property rights in a trademark as they do in stock certificates.

The revival of the trespass to chattels doctrine in the context of cyberspace has had unexpected and far-reaching consequences.  Laura Quilter, The continuing Expansion of Cyberspace Trespass to Chattels, January 2002, Volume 17 Issue 1 Article 24, Berkeley Tech. L. J., 421.  By uprooting trespass to chattels from all its traditional restraints, the doctrine has become completely malleable, able to fit any and all situations. Id. at 441. A trespasser is liable when the trespass diminishes the condition, quality or value of personal property. Id. The quality or value of personal property may be "diminished even though it is not physically damaged by defendant's conduct." *eBay* at 1071 (N.D. Cal. 2000).

It is undisputed that Plaintiff owns right and title to its federally protected trademark. Plaintiff has invested significant resources in advertising and promotion under its name which serves as a unique identifier of the services offered.  Compl. ¶16.  Mr. Gonzalez, the owner of the

mark, has a substantial interest in precluding others from using this distinctive mark which would disparage the reputation or dilute the uniqueness the mark has acquired over the years.  Id.  Plaintiff has not consented to Defendant's unauthorized use of this trademark in commerce.  Defendant is actively diminishing the value, is causing irreparable damage, and continuing to dilute Plaintiff's mark each and every time they advertise their services using Plaintiff's trademark.  Compl. ¶ 73.  Defendant's use of Plaintiff's mark continues to provide a financial benefit to itself, even though they have no ownership rights whatsoever in the mark, and in derogation of Plaintiff's rights.  Compl. ¶ 72.

### F.  Plaintiff Prevails as a Matter of Law:  Count Seven Plaintiff is Entitled to Judgment Against Defendants Under Florida State Law Claims

Florida's Deceptive and Unfair Trade Practices Act [FDUTPA], Fla. Stat. §§ 501.201-.213 is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or comer.  § 501.202(2); *see also Delgado v. J.S. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 605-06 (Fla. 2d DCA 1997).  A deceptive practice is one that is "likely to mislead" consumers.  *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000).  An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *Samuels v. King Motor Co. of Boca Raton*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001).

Defendant admits to using Plaintiff's trademark not only as a keyword in Google AdWords program, but also uses the exact trademark as their advertising copy.  Def.'s Answer ¶¶ 13, 14, 23, 36.  Defendant admits that by purchasing the trademark as a keyword that they are intending for the sponsored advertising to appear at the top of search page results.  Def.'s Answer ¶ 14.

Defendant admits to being a direct competitor of Plaintiff offering the same or similar services to consumers.  Def.'s Answer ¶ 12.  Defendant admits to a screenshot depicting the accurate search page results on Google search when a consumer types in Plaintiff's trademark. Def.'s Answer ¶ 13.  This screenshot clearly demonstrates that Defendant commandeers a superior position in search results and then actually compounds consumer confusion by using Plaintiff's exact trademark in their sponsored advertising copy which appears even superior to Defendant's own company name.

### G. Plaintiff Prevails as A Matter of Law:  Count Eight Unjust Enrichment

Count Eight of Plaintiff's Complaint charges Defendant with unjust enrichment.  "If any entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment." *See State Farm Fire & Cas. Co. v. Silver Star Health & Rehab.*, 739 F. 3d 579, 584 (11th Cir. 2013); *Standifer v. Metro Dade Cnty.*, 519 So.2d 53, 54 (Fla. 3d DCA 1988).

It is undisputed that Plaintiff has not consented or authorized Defendant to use Plaintiff's trademark as their own in their advertising program with Google AdWords.  Defendant denies at receiving a financial benefit from using Plaintiff's trademark in their advertising program, Def.'s Answer ¶¶ 91, 93, but it can be inferred from Defendant's actions of hiring two law firms to defend this action that the expense of hiring two law firms is less than the profits they are deriving from misappropriating Plaintiff's trademark.

Defendant is being unjustly enriched by using without consent Plaintiff's personal property.  It is undisputed that Plaintiff has not consented to nor has authorized Defendant to use in commerce Plaintiff's federally protected trademark.  Plaintiff has attempted on two occasions

to have the Defendant cease their infringing activity.  Defendant admitted to receiving Plaintiff's requests to cease and desist.   Def.'s Answer ¶¶ 18-19.

### V.      DEFENDANT'S DEFENSES HAVE NO LEGAL BASIS AND SHOULD BE STRICKEN

Fed. R. Civ. P. 11 requires every pleading . . . be signed by at least one attorney id. at (a). The Rule also requires that the lawyer "signing, filing, submitting, or later advocating" the pleading certify "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" id. at (b) that the claims, defenses, and other legal contentions are *warranted by existing law or by a non-frivolous argument*. . . id. at (b)(2), [emphasis added] and the factual contentions have evidentiary support . . . id at (b)(3) and the denials of factual contentions are warranted on the evidence. . . id at (b)(4).

**Defendant claims Plaintiff fails to state a cause of action**.  Def.'s Answer ¶ 100.  This claim must fail as Plaintiff has made a prima facie case for each of the counts alleged in the Complaint through Defendant's own admissions and/or judicially noticed facts.

**Defendant admits to using Plaintiff's trademark in commerce, however defends such use as being a "source identifier; rather, it has only engaged in the permissible use of the phrase "engineered tax services" in the general and generic sense and as a description of a type of tax and accounting service.**"  Def.'s Answer ¶ 101.  This claim also must fail as the U.S.P.T.O. does not grant trademark rights for generic, general, descriptive terms. Generic trademarks are not protected. They cannot be registered with the U.S. Patent and Trademark Office. 11th Circuit Civil Pattern Jury Instructions 10.1.1(a) (2013).

Defendant's purported defense of "Plaintiff's trademark as being generic" is merely a conclusory statements and general denials lacking any supporting facts and failing to recite the

elements of a recognized affirmative defense. The averments are merely a disagreement with the U.S.P.T.O. for granting federal rights to the Plaintiff for the mark, "Engineered Tax Services." According to the Eleventh Circuit Civil Pattern Jury Instructions, an example of a generic trademark is "escalator" for moving stairs. Id. Generic trademarks are not protected. Id. They cannot be registered with the U.S. Patent and Trademark Office. Id.

Plaintiff stipulates that it disclaimed the use of Tax Services as generic, but when used in conjunction with the term "Engineered," it is entitled to protection under the Lanham Act as the U.S. Patent and trademark granted Plaintiff registration under the Principal Registry for the term, Engineered Tax Services. Defendant is not purchasing and using the term, Tax Services, they are using the protected term, Engineered Tax Services.

**Defendant claims that "Plaintiff's claims are merely an impermissible attempt to assert exclusivity over terms" according to the USPTO the right in trademark grants exclusive use**. Def.'s Answer ¶ 102-3 and 106. Pursuant to 15 U.S.C. a registration certificate is prima facie evidence of exclusive use of the trademark. This claim must fail as a defense, as it is Plaintiff's right under the Lanham Act to exercise its right to exclusive use over all other to the use of their mark.

**Defendant claims that Plaintiff "is not entitled to a trademark registration of a general, generic and descriptive phrase**." Def.'s Answer ¶ 104. Defendant is substituting its judgment for that of the U.S.P.T.O. which granted right to Plaintiff. Defendant goes on to claim that "Plaintiff's asserted federal trademark registration. . . is invalid and which it will challenge by filing a cancellation action." Id. Once again, this purported defense is not recognized in any court of law and therefore must also fail.

**Defendant's contention that it "has at all times, acted professionally, in good faith and within permissible use of the phrase in dispute**." Def.'s Answer ¶ 105. This claim must fail, as the use is not permissible.

**Defendant's conclusory claim that "no consumers have been confused, nor is there a likelihood of confusion**" Def.'s Answer ¶ 107.  Mere general denials, without more, and lacking any supporting facts and failing to recite any facts of a legally recognizable defense must fail.

**Defendant claims "plaintiff is estopped, in part or in whole, from obtaining any remedy**." Def.'s Answer ¶ 108 There is no basis for this claim whatsoever as it is categorically conclusory.

**Defendant claims that "Plaintiff's claims are barred, in part or in whole, by illegality**." Def.'s Answer ¶ 109.  Again, a conclusory statement with no legal basis whatsoever.  This claim must also be dismissed.

Model Rules of Professional Conduct 3.1 Defense must be meritorious.  Lawyer's Duty of Reasonable Inquiry.  Defendant's response includes implausible claims - not objectively reasonable, legally unsupportable, manifestly frivolous, and demonstrate a lack of good faith.

Moreover, a defense that claims that the U.S.P.T.O should not have granted Plaintiff rights in its mark should also fail as there is no legal basis for disregarding federal law with which one disagrees.  This purported defense is completely groundless and frivolous and should be summarily dismissed.

## VI.   CONCLUSION

There are no material issues of fact in dispute.  Plaintiff owns right and title to its trademark which Defendant admits to using in commerce without authorization.  Plaintiff and Defendant are direct competitors and use the same channels of trade which compounds consumer confusion as to the source of services provided.  Defendant's use of Plaintiff's mark makes it appear as if Defendant's services are somehow affiliated with or sponsored by Plaintiff.  Defendant's use of Plaintiff's registered mark has caused and will continue to cause irreparable harm for which Plaintiff seeks relief from this Court.

**WHEREFORE,** Plaintiff prays this Court grant Judgment on the Pleadings for Plaintiff and against Defendant, a permanent injunction, punitive and exemplary damages, and attorney's fees and any further relief this Court deems fair and just.

### Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by electronic mail through CM/ECF filing portal on December 12, 2016 on all counsel or parties of record on the Service List below.

**I HEREBY CERTIFY** that a good faith effort has been made by Plaintiff's Counsel to resolve the issues raised in the motion by two communications e-mailed to Defendant's counsel dated December, 8, 2016.  There has been no filing of "Notice of Inactivity" for Defendant's Counsel.  Counsel for Defendant has read the e-mail as evidenced by the "return receipt" email.  Counsel for Plaintiff has made reasonable efforts to confer with all parties who may be affected by the relief sought in the motion.   However, Counsel for Defendant has failed to respond as of the date of filing this motion.

  /s/ Dawn M. Alba
Dawn M. Alba, Esq.

F.B.N.:  112814
Attorney for Plaintiff, Engineered Tax Services, Inc.
303 Evernia Street, Suite 300
West Palm Beach, Florida 33401
dalba@engineeredtaxservices.com
lawyeralba@gmail.com
561-253-6638

SERVICE LIST

L. Louis Mrachek, Florida Bar No. 182880
MRACHEK, FITZGERALD, ROSE,
KONOPKA, THOMAS & WEISS, P.A.,
Attorney for Defendant
505 South Flagler Drive, Suite 600
West Palm Beach, FL  33401
(561) 655-2250
(561) 655-5537 (facsimile)
lmrachek@mrachek-law.com

Dawn M. Alba, Esq.
F.B.N.:  112814
Attorney for Plaintiff, Engineered Tax Services, Inc.
303 Evernia Street, Suite 300
West Palm Beach, Florida 33401
dalba@engineeredtaxservices.com
lawyeralba@gmail.com
561-253-6638

.