**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

The Honorable Judge MARRA

ENGINEERED TAX SERVICES, INC.,

     Plaintiff

     v.

SCARPELLO CONSULTING, INC.,

     Defendant.

Case No.  16:CV-81795-KAM

**DEFENDANT SCARPELLO CONSULTING, INC.'S MOTION FOR SUMMARY**

**JUDGMENT AND CORRESPONDING MEMORANDUM OF LAW**

## I.   MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Local Rules 7.1 and 7.5, Defendant Scarpello Consulting, Inc.  ("Scarpello Consulting") respectfully moves the Court for an order granting summary judgment against Plaintiff Engineered Tax Services, Inc. on all claims in the Complaint

## II.   INTRODUCTION

A company which provides brake and alignment services may choose the name "Brake and Alignment Services" as its name, but it does not have protectable trademark rights in such name so as to allow it to prevent its competitors from advertising that they too provide "brake and alignment services." Similarly, Engineered Tax Services (hereinafter "ETS") asks this Court to find Scarpello Consulting guilty of trademark infringement and other claims for using "engineered tax services" as part of its Google advertising to describe its tax services that involve the use of an engineer.  The type of Google advertising at issues in this case allows a business to list the words and phrases it believes are likely to be used by consumers to search for its services, so that when such words or phrases are searched using Google, the business' ad (conspicuously marked as an "Ad") appears on the results page.

Scarpello Consulting and ETS are competitors who both provide cost segregation and 179D services.  Both involve the use of an engineer or other qualified individual with the necessary engineering knowledge to provide the tax benefit available through each service.

ETS claims fail as a matter of law because its purported trademark is descriptive (something ETS admits); because ETS and others use derivatives of the word "engineer" to describe itself and these tax services; because it has failed to provide any evidence of confusion; and because it has failed to provide any evidence of damages.  Descriptive phrases, and even trademarks, may be used in Google advertising without constituting trademark infringement, and uses such as those at issue here are legitimate fair use which is not actionable.

1

### III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Motions for summary judgement are appropriate under Fed. R. Civ. P. 56(c) "if the pleadings, depositions, answers to interrogatories . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Summary judgment involves the determination as to "[w]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). While likelihood of confusion is often a jury question, this issue is amenable to summary judgment in appropriate cases. *HBP, Inc. v. American Marine Holdings, Inc.,* 68 U.S.P.Q 2d 1798, 1799-1800 (M.D. Fla. 2003). *See also Tana v. Dantanna's*, 611 F.3d 767, 775 (11th Cir. 2010) (explaining that Eleventh Circuit "routinely" weighs likelihood-of-confusion factors on summary judgment); *Alliance Metals, Inc., of Atlanta v. Hinely Industries, Inc.*, 222 F.3d 895, 907 (11th Cir.2000)

### IV.    ARGUMENT

The undisputed facts in this case show that ETS has failed to produce any evidence to support its allegation that consumers are likely to be confused between ETS' purported "Engineered Tax Services" mark and Scarpello Consulting's use of the keywords "engineered tax services" in its Google pay-per-click advertising. As a matter of law, ETS' claims fail and Scarpello Consulting should be awarded summary judgment.

**A.    ETS' purported "Engineered Tax Services" trademark is generic and/or descriptive and thus not protectable under the Lanham Act.**

ETS claims that "Engineered Tax Services" is entitled to trademark protection under the Lanham Act.  However, because ETS' name is itself a generic or descriptive term, ETS can claim no greater rights in it.

"Trademark [ ] protection is only available to 'distinctive' marks, that is, marks that serve the purpose of identifying the source of the goods or services." *WSI v. Forman, et al.,* 509 F.3d 1351, 1357 (11th Cir. 2007) (internal citations omitted).  In determining the "distinctiveness" of a trademark, this Circuit follows the well-established continuum of trademark categories ranging from least to most distinctive: 1) generic, 2) descriptive, 3) suggestive, and 4) fanciful or arbitrary. *Forman,* 509 F.3d at 1357. "The term which suggests the basic nature of the service is generic . . . is incapable of achieving service mark protection." *Investacorp, Inc. v. Arabian Inv. Banking Corp EC,* 931 F.2d 1519, 1522 (11th Cir. 1991).  Trademarks that are generic words are invalid. *See, e.g., Tana v. Dantanna's*, 611 F.3d 767, 774 (11th Cir. 2010) ("[g]eneric marks…are, on the other hand, generically incapable of receiving trademark protection and may never be registered as trademarks under the Lanham Act"); *see also Forman*, 509 F.3d at 1358 (generic use of a word may not be registered as a trademark).

"A descriptive term merely identifies a characteristic of quality of the service."  *Id.* Descriptive marks cannot be protected or asserted exclusively unless they have acquired a "secondary meaning" in the minds of the public.  *Custom MFG. and Engineering, Inc. v. Midway Services, Inc.,* 508 F.3d 641, 648 (11th Cir. 2007). *See also Popular Bank of Fla. v. Banco Popular de P.R.*, 9 F. Supp. 2d 1347, 1357 (S.D. Fla. 1998) (mark "Popular Bank of Florida" was merely descriptive and only entitled to trademark protection if bank could show that mark had acquired secondary meaning); *Vokal, Inc. v. Nelly*, 2005 WL 2304965 at 3 (M.D. Fla. 2005) (stating that "descriptiveness" must be construed rather broadly and when a word or phrase naturally directs attention to the qualities, characteristics, effect or purpose of the product or services then it cannot be claimed as an exclusive trade name).  Indeed, ETS admits that its purported trademark at issue in this case is descriptive. Exhibit 34, 14:12-18.

Scarpello Consulting is entitled to summary judgment because the term "engineered tax

services" is an unprotectable generic or descriptive term for tax services that use an engineer's report, and which was generic or descriptive at the time of its adoption by ETS. *See Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1321 (11th Cir. 2012) (in finding the term "ale house" generic, the court held, "The prominent use of a generic term by two competitors may understandably confuse consumers; however, this does not make the term any less generic" *see also Forman*, 509 F.3d at 1358 ("welding services" found to be descriptive and not protectable).   While no such confusion has occurred here, the use of generic and descriptive phrases by competitors is permissible as a matter of law, even when one competitor tries to claim trademark rights in the description.   ETS may use "engineered tax services" as its name, but the law does not allow it to thereby prevent competitors from using the phrase as an accurate description of services, that is, services involving the use of an engineer or someone with engineering knowledge.

ETS' purported mark is generic and/or descriptive because the significant function, purpose, use or characteristic of its business to provide its customers engineered tax services. Exhibit 7; Exhibit 8.  ETS is literally using the mark to provide "engineered" tax services, and thus the mark is merely descriptive, which ETS admits.  It is not necessary that a mark describe all aspects of goods or services to be merely descriptive.   A mark is considered merely descriptive if it describes even one attribute of the services. *See In re Huddle.*, 216 U.S.P.Q. 358 (TTAB 1982).  Moreover, ETS was forced to disclaim the words "tax services" in its mark in its application for trademark registration at the U.S. Patent and Trademark Office (hereinafter "USPTO").  Exhibit 25. The disclaimer constitutes ETS' own admission that it has no exclusive rights in the word "tax services" apart from its use in the purported mark.

ETS has also failed to prove that its generic and/or descriptive purported "Engineered Tax Services" mark has any acquired secondary meaning.  Secondary meaning is defined as "the

connection in the consumer's mind between the mark and the products producer whether that producer is known or unknown." *University of Florida v. KPB, Inc.,* 89 F.3d 773, n.5 (11th Cir. 1996). To establish a claim based on secondary meaning, a plaintiff must prove "1) its mark is inherently distinctive or has acquired secondary meaning, (2) its mark is primarily non-functional and 3) the defendant's mark is confusingly similar." *KPB at 777.* A party seeking trademark protection has the burden of adducing sufficient evidence of secondary meaning to avoid summary judgment. *Forman,* 509 F.3d at 1356. The elements for determining whether a mark has obtained secondary meaning are "1) the length and manner of its use; 2) the nature and extent of advertising and promotion; 3) the efforts made by the [user of the mark] to promote a conscious connection in the public's mind between the name and [user's] product or business; and 4) the extent to which the public actually identifies the name with the [user's] product or venture." *Custom Mfg.,* 508 F.3d at 648 (quoting *Conagra Inc. v. Singleton,* 743 F.2d 1508, 1513 (11th Cir. 1984)).

ETS cannot show that its descriptive mark has acquired secondary meaning among a substantial number of present or prospective customers within its industry. First, ETS only had a registered mark for four months prior to filing this lawsuit. Exhibit 3. Second, it admits that the exact phrase and similar phrases are used by others to describe the services, thus is functional as a descriptive phrase. Exhibit 33, 70:1-23 & 128:14-129:11. Third, Scarpello Consulting does not use the phrase as a trademark, only as a descriptive phrase.

The evidence from the USPTO demonstrates that more than 180 active trademarks consist of or contain the word "tax services." Exhibit 40. More than 1,913 other trademarks consist of or contain the word "engineered." Exhibit 41. Clearly, ETS cannot credibly assert that it has engaged in "exclusive use" of "engineered" services or "tax services". There are a multitude of third-party uses and registrations of "tax services" and "engineered" for a wide

range of goods and services. Appellate ccourts have consistently held that a mark is weakened by wide spread third-party usage by other businesses and that third-party usage is impressive evidence that there will be no confusion between ETS' mark and Scarpello Consulting. *Carnival Corp. v. Sea Escape Casino Cruises, Inc.,* 74 F. Supp. 2d 1261 (S.D. Fla. 1999); *Michael Caruso and Co. Inc. v. Eastefan Enterprises Inc.,* 994 F.Supp. 1454, 1459-60 (S.D. Fla. 1998). Furthermore, the repeated use of these words and phrases is clear evidence of their descriptive nature as may be applied to a number of uses and industries.

ETS' own generic use "is powerful evidence" of genericness. *Forman*, 509 F.3d at 1359; *see also Loglan Inst. v. Logical Language Grp., Inc.*, 962 F.2d 1038, 1041 (Fed. Cir. 1992). ETS itself has used its purported trademark descriptively.   The CEO of ETS, Julio Gonzalez, discusses ETS' use of "engineered tax services" on his LinkedIn page. Exhibit 14.   Tinsley Mortimer, Director of Events for Engineered Tax Services, was quoted in a PR Newswire article dated May 12, 2017 that she was proud to bring "these engineered tax services" to a family business connection. Exhibit 4. ." By analogy, a company called Brake and Alignment Services may use that name, but the fact that it does so in an industry in which it provides brake and alignment services means that as a matter of law it cannot prevent competitors who also offer brake and alignment services from stating what they do or describing their services.

**B.      ETS' trademark registration is rebuttal at law and can be cancelled.**

ETS bases its claims for relief on the fact that it has a purported trademark for "Engineered Tax Services." However, a trademark registration is only a rebuttable presumption of a valid trademark. *See, e.g.*, 15 U.S.C. § 1115(a); *see also Harod v. Sage Products, Inc.*, 188 F. Supp. 2d 1369, 1375 (S.D. Ga. 2002) (defendant can rebut presumption of validity of registered trademark and obtain cancellation of the registration). An opponent of the registration can provide proof of descriptiveness or genericness to overcome the presumption.  *Klayman v.*

*Freedom's Watch, Inc.*, 765 F.Supp.2d 1348 (S.D. Fla. 2008).

ETS obtained its purported trademark in June 2016. <u>Exhibit 3</u>. The cancellation period for a trademark is five years, meaning that there are almost four years left in which the purported "Engineered Tax Services" trademark can be cancelled. *See, e.g.*, 15 U.S.C. § 1064(1)–(2); *see also Neva, Inc. v. Christian Duplications Intern., Inc.*, 743 F. Supp. 1533, 1549 (M.D. Fla. 1990) (trademark registration may be cancelled within five years from initial date of registration for any reason that would have been sufficient to deny initial registration). A registration can be cancelled for any reason it can be opposed. *See Young v. Agb Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998) ("[t]he linguistic and functional similarities between the opposition and cancellation provisions of the Lanham Act mandate that we construe the requirements of these provisions consistently. There is no basis for interpreting them differently."). *See also Coach House Rest., Inc. v. Coach and Six, Inc.*, 934 F.2d 1551, 1558 (11th Cir. 1991) ("…the mark may be cancelled if petitioner can prove that the registration should have been barred in the first instance under Lanham Act § 2").

Here, Scarpello Consulting has filed a Petition for Cancellation of ETS' purported mark. <u>Exhibit 5</u>. The USPTO stayed the petition pending the outcome of this matter. <u>Exhibit 6</u>. Scarpello Consulting's right to cancel the registration is based on the same legal principles upon which ETS trademark is subject to summary judgment here, that is, the mark is generic and/or descriptive as to the services.

      **1.**    **The phrase "engineered tax services" and other derivatives of "engineer" are commonly used to describe cost segregation and 179D services.**

Generic use by competitors is documentary evidence of genericness. *See Colt Def., LLC v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 706 (1st Cir. 2007) (use by "several" competitors probative of genericness). Cost segregation is an engineering-based, income tax saving tool to

increase short term cash flow by accelerating depreciation of real property. Exhibit 9. Cost segregation involves the use of an engineer or a qualified person knowledgeable in engineering. Exhibit 9. 179D services are also a tax service offered by both parties, and which also involves the use of an engineer. Exhibit 33, 13:23-14:5 & 134:9-11.

Many companies have described cost segregation by using the words "engineer" and "engineered tax services:" Exhibit 19, Exhibit 20, Exhibit 21, Exhibit 22, Exhibit 23, Exhibit 27. The Journal of Accountancy has described cost segregation as fundamentally an "engineering report" or "engineering study." In at least one article, the cost segregation provider is referred to as an "engineering consultant." Exhibit 29. The IRS Cost Segregation Audit Techniques Guide outlines six general approaches to performing a cost segregation study, including the "Detailed Engineering Approach from Actual Cost Records" and the "Detailed Engineering Cost Estimate Approach." Exhibit 30. Indeed, as shown in Section 2 below, ETS uses derivatives of the word "engineer" to describe its services.

### 2. ETS did not accurately describe its services when applying for the mark.

ETS provides a "Detailed Engineering" review as part of its cost segregation services. Exhibit 7. ETS' describes itself as licensed engineering firm specializing in certain tax benefits "[w]here engineering and accounting come together" and stating that "[w]e marry the science of engineering with principles of tax and accounting." *See, e.g.*, Exhibit 8. However, in its description of services to the USPTO when applying for the purported mark "Engineered Tax Services," ETS' identification of its services is "Tax advisory services; Tax and taxation planning, advice, information and consultancy services; Tax assessment; Tax consultation; Tax declaration procedure services; Tax preparation." Exhibit 25.

Neither the word "engineered" nor any form of the word "engineer" is used in ETS' description of services to the USPTO. Exhibit 25. ETS never disclosed anything about the use of

an engineer for its business to the USPTO. Exhibit 25. If ETS had properly disclosed a description of its services, it would not have qualified for trademark registration as a matter of law.

### 3. A mark must be viewed in its entirety, not in parts

When determining whether a mark is entitled to protection, a court does not break up the mark to observe it, but looks at the overall use of the mark. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir. 1983); *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1266 (S.D. Fla. 1999). For example, if this purported mark were "brake and alignment services," the court would not break it into parts to determine whether it was a valid trademark. The services are determined from the entire name of the mark. ETS cannot dispute the true nature of its business, and it cannot dispute that it uses engineers for its services and derivatives of the word to describe its services. Exhibit 7; Exhibit 8. "Engineered" tax services is simply descriptive of some services ETS—and others—provide.

### C. ETS has failed to demonstrate a likelihood of confusion between its purported mark and the descriptive phrase "engineered tax services" that Scarpello Consulting uses in its Google advertising because the keywords are not source identifiers; rather, they are descriptive of the services.

Summary judgment is appropriate because ETS cannot show a likelihood of confusion between its purported mark and the descriptive phrase, "engineered tax services," used as keywords in Scarpello Consulting's Google advertising. Google Adwords is advertising based on prospective "guesses" as to what phrases internet users might use to search for the types of services a business provides, thereby assuring the business' ad is displayed when such descriptors are searched. Exhibit 35, 150:23-151:11. There is no confusion in such use.

In determining whether a plaintiff has demonstrated likelihood of confusion, the Eleventh Circuit will analyze seven factors: 1) type of mark; 2) similarity of mark; 3) similarity of the

products the marks represent; 4) similarity of the parties' retail outlets and customers; 5) similarity of the advertising media used; 6) Defendant's intent and 7) actual confusion. *Frehling Enterprises, Inc. v. International Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir. 1999). The two most important factors are the type of mark and evidence of actual confusion. *Id.* ETS also alleges a Federal False Designation of Origin claim until 1125(a), which "proscribes the behavior of 'passing off' or 'palming off', which 'occurs when a producer misrepresents his own goods or services as someone else's." *Custom Mfg.*, 508 F.3d at 746 (internal citation omitted). "To establish a prima facie case under 1125(a), a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it 'such consumers were likely to confuse the two.'" *Id.* (internal citation omitted).

Here, the most relevant and significant factors weigh against ETS as a matter of law because the use of the phrase is necessarily descriptive as part of Google advertising.

### 1.    ETS' Purported Mark is Weak

As discussed above, ETS  purported mark is generic or merely descriptive of its services, and ETS admits that its mark is descriptive. At best, ETS holds a very weak descriptive mark in a common phrase, negating the right to exclusivity. Even assuming that ETS' purported mark is entitled to any trademark protection, it consists of one disclaimed descriptive phrase ("Tax Services") and a singular descriptive term ("Engineered"), which taken as a whole are only descriptive of its services. *See, e.g.,* Exhibit 4 ("bring these engineered tax services" to new client).

### 2.    Scarpello Consulting has legally and in good faith.

Scarpello Consulting's use of "engineered tax services" is in good faith. There is no evidence that it has ever claimed any affiliation with ETS or that anyone was actually confused between the companies as a result of the Google advertising. Scarpello Consulting provides tax

services that involve the use of an engineer, and it rightfully and lawfully uses the descriptive phrase "engineered tax services" as part of its Google advertising in estimation that consumers might use that phrase to search for such engineering-based tax services. *See also* Section 4 below (case law allowing this type of Google advertising and holding it is not trademark infringement).

### 3.      There is no actual confusion between ETS and Scarpello Consulting's ad.

The law in this Circuit holds that actual confusion is the best evidence of a likelihood of confusion. *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330 (11th Cir. 1999) ("It is undisputed that evidence of actual confusion is the best evidence of a likelihood of confusion." *Id*. at 1340.). ETS' inability to provide any evidence of actual confusion reveals why its claim fails as a matter of law. *See also Amstar Corporation v. Domino's Pizza, Inc.* 615 F.2d 252 (5th Cir. 1980) (actual confusion is the "best evidence"); *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 190 (11th Cir. 2005) (actual confusion is the "most persuasive factor"). Furthermore, the standard for trademark infringement is whether confusion is *likely* among reasonable customers, not just merely possible.  See, e.g., *Popular Bank of Fla.*, 9 F. Supp. 2d at 1358 (S.D. Fla. 1998) ("Likelihood of confusion needs probable confusion rather than mere possible confusion.")

ETS provides no evidence of actual confusion with Scarpello Consulting. No consumers have been confused by the Google ad.  Scarpello Consulting has received only 11 online customers in the relevant time period, and there is no evidence that any of them saw this particular ad, which occurs only when someone searches for "engineered tax services" using Google.

### 4.      A multitude of courts have ruled against plaintiffs who bring trademark infringement lawsuits based on keyword advertising.

Trademark infringement lawsuits based on keyword advertising have been routinely thrown out in courts around the country. To provide just one example, in the Ninth Circuit, a trademark infringement lawsuit based on keywords used in Google advertising was dismissed

because the Court found that the plaintiff "[could not] plausibly claim that [Defendant's] mere use of keywords caused any consumer confusion." *Infostream Group, Inc. v. Avid Life Media, Inc.*, 2013 WL 6018030 (C.D. Cal. 2013). In *Infostream*, the plaintiff alleged that the defendant purchased keywords in its Google advertisement matching the plaintiff's "Mutually Beneficial Relationships" and "Seeking Millionaire" registered trademarks. *Infostream*, 2013 WL 6018030 at *4-5. The court held that internet consumers "fully expect to find some sites that aren't what they imagine based on a glance at the … search engine summary," and outside of the domains that "actively claim affiliation with the trademark holder, consumers don't form any firm expectation about the sponsorship of a website until they've seen the landing page – if then." *Id.* at *12-13. Numerous other courts in a variety of circuits have agreed with the Court's approach in *Infostream*.[1]  Because Scarpello Consulting does not use ETS' mark as a source identifier, but instead simply as a generic and/or descriptive phrase in Google advertising, ETS' claim fails as a matter of law.

---

[1] *See, e.g., Network Automation Inc. v. Advanced Sys. Concepts Inc.*, 638 F.3d 1137, 1137 (9th Cir. 2011) (finding no likelihood of confusion after applying factor test, focusing most heavily on strength of plaintiff 's mark, lack of evidence of actual confusion, type of goods and degree of care likely to be exercised by the purchaser, and labeling and appearance of advertisements and the surrounding context on the screen displaying the results page); *College Network v. Moore Publishers*, 378 F. App'x 403, 413 (5th Cir. 2010) ( jury verdict of noninfringement upheld where defendant used plaintiff's trademark as a keyword ad trigger because sufficient evidence supported the jury's finding of no likelihood of confusion—jury was permitted to view the keyword search process and visually compare the companies' websites in reaching its decision); *Generic Steel Domestic Sales*, 2013 WL 1900562 (court held no likelihood of confusion where defendant used plaintiff 's trademark in the advertising copy of its Google AdWords advertisement and where defendant purchased plaintiff 's trademark as a keyword ad trigger for sponsored links); *CollegeSource, Inc. v. AcademyOne, Inc.*, 2012 WL 5269213 (E.D. Pa. Oct. 25, 2012) (no likelihood of confusion found where the surrounding ad context, including separation of sponsored ad links and labeling of sponsored links, decreased any potential likelihood of confusion); *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 2009 WL 4263699 (D. Minn. Nov. 25, 2009) (court held no trademark infringement due to a lack of likelihood of confusion, based on the finding that expert testimony was inadequate to support likelihood of confusion); *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 527 F. Supp. 2d 205 (D. Mass. 2007) (holding that triggered advertisement clearly identified defendant as source of ad and thus no likelihood of confusion; defendant's use of plaintiff 's trademark as a keyword ad trigger constituted fair, aggressive competition that did not result in customer confusion and was not prohibited by the Lanham Act); *J.G. Wentworth, S.S.C. Ltd. P'ship*, 2007 WL 30115 (E.D. Pa. Jan. 4, 2007) (finding defendant's purchase of plaintiff 's trademarks as keyword ad triggers for Google's AdWords program did not result in actionable likelihood of confusion because of separate and distinct nature of the links created on search results page); *GEICO v. Google, Inc.*, 2005 WL 1903128 (E.D. Va. Aug. 8, 2005) (court held no likelihood of confusion or initial interest confusion existed where Google used GEICO's trademark as a keyword ad trigger and the resulting sponsored link text did not include GEICO's trademark); *Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, No. CV H-17-1068, 2017 WL 2957912, at *8 (S.D. Tex. July 11, 2017) ("the mere purchase of AdWords alone, without directing a consumer to a potentially confusing web page, is not sufficient for a claim of trademark infringement.")..

Furthermore, ETS' lack of evidence on actual confusion or a likelihood of confusion is dispositive on its claim of unfair competition. For the claim of unfair competition to succeed, plaintiff must have compelling evidence demonstrating likelihood of confusion. *See Michael Caruso*, 994 F. Supp. at 1457 (failure to make adequate showing of likelihood of confusion means that plaintiff does not have a substantial likelihood of succeeding on its trademark infringement or unfair competition claims).

### D.      Scarpello Consulting is entitled to a fair use of "engineered tax services."

It is an absolute defense to claims under the Lanham Act if the defendant's use of the plaintiff's purported mark is "otherwise than as a mark . . . and used fairly and in good faith only to describe the goods or services of such party." 15 U.S.C. § 1115(b)(4); *see also* 15 U.S.C. § 1125(c)(3)(A). Affirming summary judgment, the Eleventh Circuit explained:

> A fair use defense is established if a defendant proves that its use is (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith. The "fair-use" defense, in essence, forbids a trademark registrant to appropriate a descriptive term for its exclusive use and so prevent others from accurately describing a characteristic of their goods.

*Int'l Stamp Art, Inc. v. United States Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (internal quotations omitted). This defense is available to Scarpello Consulting regardless of whether ETS' mark is found to be valid or invalid (though its claim fails for an independent reason if the trademark is invalid). *Munters Corp. v. Matsui Am., Inc.*, 730 F. Supp. 790, 800 (N.D. Ill. 1989), aff'd, 909 F.2d 250 (7th Cir. 1990).

In this case, there is no genuine issue of material fact that Scarpello Consulting used the term "engineered tax services" not as a mark, but as a generic or descriptive phrase, and did so in good faith. Here, Scarpello Consulting uses the term "engineered tax services" not to identify ETS' services, but merely as an estimate of what words and phrases might be used in a Google search for its services, which by definition is descriptive use of such words and phrases. *Ford*

13

*Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d 1350, 1369 (M. D. Fla. 2012); *see also Trail Chevrolet, Inc. v. Gen. Motors Corp.*, 381 F.2d 353, 354 (5th Cir. 1967) ("[A]ppellants should be free to advertise that they sell used Chevrolets, that they repair Chevrolet cars, that they have a number of Chevrolets to choose from, or that they sell used Chevrolets and other fine cars or the like. They are entitled to offer Chevrolet cars for sale by the name so long as the registered mark or tradename of Chevrolet is not used in a manner to deceive purchasers.").

As in *Trail Chevrolet*, Scarpello Consulting is free to advertise that it offers cost segregation and 179D services, which involve the use of an engineer, through the use of descriptive phrases such as the one in dispute.   Such use, as described also in Part C above, is in good faith when the phrase accurate describes its services, that is tax services that involve the use of an engineer.   Indeed, ETS admits that (1) it provides tax services; (2) that some of its tax services involve the use of an engineer (which is why it markets itself as an "engineering-based firm"); and other competitors in the industry use variations of the word "engineer" as part of describing the same services.   INSERT JULIO DEPO CITE.   Scarpello Consulting is simply one such competitor.

**E.      ETS has shown no damages as a result of Scarpello Consulting's Google advertising.**

ETS is required to show that Scarpello Consulting caused it to suffer monetary damages in order to prevail on its Lanham Act claims. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1252 (11th Cir. 2007). Scarpello Consulting has not obtained any customers through the use of the keywords "engineered tax services" in its Google pay-per-click advertisement. Exhibit 28. This means Scarpello Consulting has no profits attributable to its allegedly infringing ad, and it therefore cannot be liable for trademark infringement independent of the issue whether ETS even has a valid trademark.   The ad has only generated a few leads, none of which result in paying work from a confusion with ETS.   Indeed, ETS claimed in

discovery that it wanted Scarpello Consulting's entire customer list to determine damages, but the Court denied ETS' motion to compel, finding that such evidence was outside the scope of discovery.  ECF #91 at p. 7-8.  Despite this ruling, ETS never amended its initial disclosures or its discovery responses on its damages or how it calculated such damages.  ECF#31 at ¶C; Exhibit 36 at Interrogatory No. 7; *see also* Exhibit 33 at 95:22-97:8.

>    **F.**    **ETS has failed to show any initial interest confusion, which is a doctrine not recognized in the Eleventh Circuit in any event.**

ETS' infringement claims also fail because the doctrine of initial interest confusion is inapplicable and not recognized by the Eleventh Circuit.  Even if the claim were to be recognized here, the facts here do not constitute initial interest confusion.

Initial interest confusion is a theory of trademark infringement claiming that a prospective customer may be confused initially, but that confusion is eliminated before the purchasing decision.  4 *McCarthy on Trademarks and Unfair Competition* § 23:6.  The Eleventh Circuit has not recognized initial interest confusion as actionable trademark infringement. *See, e.g.*, *N. Am. Med. Corp v. Axiom Worldwide Inc.*, 522 F.3d 1211, 1224 n.10 (11th Cir. 2008).  In fact, in such situations the Eleventh Circuit has suggested that initial interest confusion is not actionable.  *See Suntree Technologies Inc. v. EcoScents Intern. Inc.*, 693 F.3d 1338, 1347 (11th Cir. 2012) ("At least where the initial interest confusion is remedied prior to the consummation of the sale, such confusion is not sufficient to satisfy the likelihood of confusion test.").  *See also Vital Pharm., Inc. v. Am. Body Bldg. Products, LLC*, 511 F. Supp. 2d 1303, 1318 (S.D. Fla. 2007) ("The Eleventh Circuit has not embraced initial interest confusion and I find it unpersuasive.  When the bottom line is sales of a particular product, initial confusion prior to and concluding before the point of purchase does not seem dispositive in a likelihood of confusion analysis.").  In *Hydentra Hlpint. Ltd. v. Luchian*, 2016 WL 5951808 (S.D. Fla. Jun. 2, 2016), the

Court specifically noted that "District Courts in this circuit have been reluctant to adopt [the initial interest of confusion] approach."

### G.      Plaintiff's other claims fail as a matter of law.

ETS' other claims of trespass to chattels, common law deceptive unfair trade practices, and common law unjust enrichment have no basis and Scarpello Consulting should be awarded summary judgment.

Florida state courts have never recognized trespass to chattels as a viable claim under trademark law. "Trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification." *Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So. 2d 835, 846 (Fla. Dist. Ct. App. 2001) (internal citation omitted). The word 'chattels' is defined as:

> Every species of property, movable or immovable, which is less than a freehold. * * * Personal chattels are properly things movable, which may be carried about by the owner; such as animals, household stuff, money, jewels, coin, garments, and everything else that can be put in motion and transferred from one place to another.

*Id.* (internal citation omitted). "A survey of Florida law reveals that the trespass cause of action has been applied to chattels such as a black mare, logs, a wagon and mule, clothing, crates of pears, and an automobile, but never to a bank account." *Id.* Federal courts prefer to give deference to the state court's decisions. *See F.D.I.C. v. Skow*, 741 F.3d 1342, 1346 (11th Cir. 2013) ("When resolving issues of state law on which the state's highest court has not spoken, we must give proper regard to relevant rulings of other courts of the State.") (internal quotations and citations omitted). ETS' claim for trespass to chattels must fail.

ETS' claim for deceptive trade practices is nothing more than its claim for trademark infringement cast as a different cause of action. Scarpello Consulting has shown above that as a matter of law, ETS has no viable basis for its trademark infringement action. Thus, ETS'

16

deceptive trade practices claim fails for the same reasons.

To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *Golden v. Woodward*, 15 So. 3d 664, 670 (Fla. Dist. Ct. App. 2009) (citations omitted). "An action for 'unjust enrichment' exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." *Id.* (citing *Henry M. Butler, Inc. v. Trizec Prop., Inc.*, 524 So.2d 710, 711 (Fla. 2d DCA 1988)).

ETS has conferred no benefits on Scarpello Consulting and Scarpello Consulting has accepted no benefits. Scarpello Consulting has done nothing but engage in fair use of descriptive keywords in its Google advertising that are commonly used in the industry in multiple variations. *See* Exhibits 19, 20, 21, 22, 23, 24, 27. All these claims are based on some alleged wrongful conduct which Scarpello Consulting has shown above is not wrongful. Scarpello Consulting is entitled to judgment on this claim.

**H.      Scarpello Consulting is entitled to attorney fees for defending this claim.**

Scarpello Consulting respectfully asks to be awarded its attorney fees for the defense of ETS' lawsuit because ETS is unable to prove any element and brought the lawsuit despite clear law nationwide that use of purported trademarks as keywords for Google advertising is not infringement, particularly when such words are descriptive.

A prevailing defendant may be awarded attorney fees in a Lanham Act case. "The court in exceptional circumstances may award reasonable attorney fees to the prevailing party." *See, e.g.*, 15 U.S.C. § 1117(a); *see also Vital Pharmaceuticals, Inc. v. American Body Bldg. Products*,

*LLC*, 510 F. Supp. 2d 1043, 1048 (S.D. Fla. 2007) ("district court has broad discretion" in determining what actions or conduct meet the exceptional circumstances standard for purposes of awarding a prevailing defendant fees pursuant to the Lanham Act).

It is not mandatory "that a plaintiff's conduct be malicious, fraudulent, deliberate and willful to qualify as an exceptional case." *Vital Pharmaceuticals*, 510 F. Supp. 2d at 1047. In *Vital*, plaintiff "failed to establish any of the three elements required to prevail on a Lanham Act claim." *Id.* at 1048. The plaintiff chose not to present survey evidence or any evidence demonstrating the effectiveness of the advertising on the minds of the customers, except from two evidently biased witnesses. *Id.* at 1049. The court found that plaintiff was acting in bad faith, but indicated that a "less than bad faith standard" may qualify as "exceptional circumstances" for awarding a prevailing defendant fees under § 1117(a). *Id.* at 1045.

Here, ETS fails to provide evidence of its trademark claim with any of the necessary evidence that it has a right of exclusivity to a descriptive phrase, that any person was actually confused or likely to be confused from the accused act (the Google advertising), or that ETS was damaged in any way.  Indeed, ETS forced several hearings on its motions to compel and failed to prove any of its allegations of withholding documents or other evidence.  Furthermore, whether intentional or not, ETS failed to provide an accurate description of its services to the USPTO which, when considered under applicable trademark law, shows that ETS is not entitled to trademark protection of its chosen name.  For these reasons, Scarpello Consulting respectfully asks to be awarded its attorney fees for defending this claim should the Court find that it is the prevailing party.

## V.    CONCLUSION

Based on the foregoing, including Scarpello Consulting's Statement of Material Facts and evidence submitted herewith, summary judgment should be granted for Scarpello Consulting on all counts.

Dated:  April 20, 2108.

SCARPELLO CONSULTING, INC., Defendant,

By: : _/s/  L. Louis Mrachek_____
    L. Louis Mrachek, Florida Bar No 182880
    MRACHEK, FITZGERALD, ROSE, KONOPKA,
    THOMAS & WEISS, P.A.
    505 South Flagler Drive, Suite 600
    West Palm Beach, FL  33401
    (561) 655-2250
    (561) 655-5537 (facsimile)
    lmrachek@mrachek-law.com

    and

    Daniel J. Fischer, #22272 (Admitted pro hac vice)
    KOLEY JESSEN P.C., L.L.O.
    One Pacific Place, Suite 800
    1125 South 103rd Street
    Omaha, NE  68124-1079
    (402) 390-9500
    (402) 390-9005 (facsimile)
    Dan.Fischer@koleyjessen.com
    Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 20th day of April, 2018, a true and correct copy of the foregoing Motion for Summary Judgment on behalf of Defendant Scarpello Consulting, Inc. was served upon the following by email as follows:

Dawn M. Alba
Engineered Tax Services, Inc.

Email: dalba@engineeredtaxservices.com

_/s/   L. Louis Mrachek_____
L. Louis Mrachek